LEGAL MAIL.
Provided to
Wakulla CI

*NO IFP FILED*
*NO FEE PAID*

IN THE UNITED STATES DISTRICT COURT
FOR THE ___SOUTHERN___ DISTRICT OF FLORIDA
_____ DIVISION

JUL 30 2018

*(Write the District and division, if any, of the court in which the complaint is filed.)*

FOR MAILING _____

___PROPHET PAULCIN___

_____

.

_____

*(Write the full name of each Plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

**Complaint for Violation of Civil Rights**
**(Prisoner Complaint)**

Case No._____
*(to be filled in by the Clerk's Office)*

Jury Trial: ☑ Yes ☐ No
*(Check One)*

-against-

___JULIE JONES, SEC. FL. Dept of___

___Corr, et___

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

REC'D by _____ D.C.

JUL 09 2019

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – KEY WEST

---

### NOTICE

Federal rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing man include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plain tiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in *forma pauperis*.

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide eth information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name _____ PROPHET PAULCIN _____

All other names by which you have been known:

_____

_____

ID Number _____

Current Institution ~~xxxxxxxxxxx~~ W11537

Address ~~xxxxxxxxxxx~~ WAKullA C.I-Annex
~~xxxxxxxx~~ 110 melAleuCA Dr.
CrawfordVille, Fl 32327

### B.    The Defendant(s)

Provide eth information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  Make sure that the defendant(s) listed below are identical to those contained in the above caption.  For an individual defendant, include the person's job or title if (if known) and check whether you are brining this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

Name        WexfordHeAlth Sources, INC

Job or Title _____

(if known)

Shield Number _____

Employer    PriVAte corporAtion

Address     2601 BlAir Stone Rd.
            TAllAhAssee, FL 32399

☑ Individual Capacity        ☐ Official Capacity

Defendant No. 2

Name        _____

2

Job or Title (if known)    *SECRETARY OF FDOC*

Shield Number

Employer    *GOVERNOR RICK SCOTT*

Address    *2601 BLAIR STONE Rd.*
           *TALLAHASSEE, FL 32399*

☑ Individual capacity        ☑ Official capacity

Defendant No. 3

Name    *TOM REIMERS*

Job or Title (if known)    *HEALTH SERVICE DIRECTOR*

Shield Number

Employer    *JULIE JONES*

Address    *2601 BLAIR STONE Rd*
           *TALLAHASSEE, Fl 32399*

☑ Individual capacity        ☑ Official capacity

Defendant No. 4

Name    *John Doe*

Job or Title (if known)    *Assistant Secretary For Health Services*

Shield Number

Employer    *Julie Jones*

Address    *2601 BLAIR Stone Rd.*
           *TALLAHASSEE Fl 32399*

☐ Individual capacity        ☑ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

THE PARTIES TO THIS COMPLAINT

Defendant No 5. Lee

Job or Title : Regional MEDICAL DIRECTOR

SHLEID No:

EMPLOYER: Julie JONES

Address: 2601 BLAIR Stone Rd TAllahassee, FL 32399-

Defendant NU: 6. JANE DOe

Job or Title: WARDEN

SHield NO:

Employer: Julie Jones

Address: MARTIN CORRECTIONAL INStitution 1150 S.W. ALLAPA-H

Ah Rd. Indiantown, Fl 34956-4397

Defendant Nu 7: D. Snider

Job or title: Assistant WArden

shield NO:

Employer: Julie JONES

Address: MARTIN C.I. 1150 S. W. Allapahah Rd. Indiantown, Fl 34956

Defendant No 8: J. HULtz

Job or title: ASSistant WArden

shield No:

Employer: Julie JONES

Address: MARTIN C.I. 1150 S. W. Allapahah Rd. Indiantown, FL 34956

Defendant No 9: M. McClure

Job or title: MD. PHD psychiatrist

Shield No:

Employer: ~~Julie Jones~~ WexFord Health Source s, INC

Address: ~~Martin~~ CHArlotte C.I. 33123 Oil well Rd. Punta Gorda, Fl 33855

Defendant No 10: A. Caddle Logan

Job or Title: psychologist

shield No:

Employer: ~~Julie Jones~~ We xford Health source s, INC

Address: MARTIN C.I. 1150 S. W. Allapahah Rd. In diantown, Fl 34956-

4397

3A.

Defendant No 11: T. RAWSON
Job or Title: psychiatrist
Shield No:
Employer: ~~Corizon Inc~~ Wexford Health Sources, Inc
Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956
Defendant No 12: T. Patten
Job or Title: ARNP
Shield No:
Employer: Wexford Health Sources, Inc
Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956
Defendant No 13: H. Wetterer
Job or Title: M.D. CHO
Shield No:
Employer: Wexford Health Sources, Inc
Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956 - 4397
Defendant No: 14: R.M. Hoyn
Job or Title: RN
Shield No:
Employer: Wexford Health Sources, Inc
Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956 - 4397
Defendant No: 15: Mrs. Guidotti:
Job or Title: HSA
~~Address:~~ MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantown, Fl 34956
Employer: Wexford Health Sources, Inc.
   Each Defendant is being sued in their individual and official capacity.
Defendant No: 16 Ms. silcilia
Job or Title: senior psychologist
Shield No:
Employer: Wexford Health Sources, Inc.
Address: MARTIN C.I. 1150 S.W. Allapattah Rd. Indiantow, Fl 34956 - 4397

(10) Julie Jones, Employer
Address MARTIN C.I. 1150 S.W.Allapattah Rd. Indiantown
FL 34966
Defendant NO#17.R.Bryner,
Job or Title: warden
Shield no:
Employer: Julie Jones
Defendant: Centurion/MHM
Job or Title: Private medical corporation
Shield no:
Employer: Julie Jones,
~~Address Springland~~
Address: 2601 Blair Stone Rd. Tallahassee, FL 32399

3C.

A.   Are you bringing suit against *(check all that apply)*:

☐     Federal officials (a *Bivens* claim)

☒     State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_8th Amendt To The U.S. Constitution, And American with Disability Act 42 U.S.C § 12101-12213 Section 504 of Rehabilitation Act of 1993, 29 U.S.C § 794_

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_____

_____

_____

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

_Plaintiff realleges the common allegations as if fully set forth herein. Defendants Wexford Health Sources Inc, are liable to plaintiff for collusion, fraud, and deceit, to deprive, impede, and discontinue the_

III.   **Prisoner Status**

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

☐     Pretrial detainee

☐     Civilly committed detainee

☐     Immigration detainee

4

## BASIS FOR JURISDICTION

psychotropic drugs of Prisoners, such as plaintiff, with a flagrant disregard of the possible consequences posed to a patients health. Defendants purposely defrauded the state government of tax payers money. By knowingly and intentionally depriving Prisoners of their psychotropic drugs, but falsely asserting that they were furnishing said patients their medications. Defendants had a policy of discontinuing Prisoners psychotropic medications and or encouraging their employees to do the same. Defendants had a policy of applying wound care to suicidal patients when multilated themselves. Instead of properly and adequately applying sutures as the necessary course of treatment to patients that multilated themselves. Defendants policy was developed and or implemented with deliberate indifference to the medical needs of Plaintiff. said policy, custom, and practice, deprived plaintiff of adequate mental health treatment at a critical time in his life, when such his mental health treatment was necessary and needed. Defendants knew that their release policy, practice, and custom, posed a sufficient substantial risk of serious harm to Prisoners and an unreasonable risk of serious damage to the Prisoner's future health and safety. Because woundcare only failed to completely cover and closed the patents' injuries. Thus, exposing all patients to bacteria, germs, and infections. And further encouraged, condoned, and facilitated a suicidal patient to continue to multilate themselves. In violation of the ban against cruel and unusual punishment under the Eight amendment to the U.S. constitution.

89.) Violation of the Eight amendment right to the u.s. constitution.

90.) Plaintiff realleges the common allegations as if fully set forth herein. Defendants. Jones, Reimers, Snider, Holtz, Lee, John Doe and Jane Doe are liable to plaintiff. Is charged with providing care and custody and custodial medical services

4A.

to Prisoners at martin and charlotte C.I. and directs all medical providers involved in plaintiff's care. And or charged with providing plaintiff with the basic necessities of life, including personal safety. Defendants were responsible for ensuring that all mental health programs, and services were properly implemented at all institutions including charlotte and martin C.I.

Defendants are charged with abdicating their duty to supervise and monitor the treatment of the mentally ill and deliberately permitting A pattern of abuse and constitutional deprivations of the mentally ill to thrive, develope and persist In violation of the ban against cruel and unusual ~~text~~ punishment.

91.) Violation of the Eight amendment right to the U.S. constitution.

92.) Plaintiff realleges the common allegations as if fully set forth herein. Defendants: Horyn, Guidotti, Logan, Rawson, Patten, wetter, silcilia, and mcClure ~~acting without the cause~~ ~~unless a part thereof~~ Are liable to plaintiff for depriving him of adequate mental health and medical treatment at a critical time in plaintiff's life when said treatment was necessary and needed. And for applying established policy, custom, and practice to plaintiff's mental and medical conditions with a flagrant disregard to the substantial risk of serious harm said policy, custom, and practice would have on plaintiff's future health and safety. In violation of the BAN against cruel and unusual punishment.

93.) Plaintiff realleges the common allegations as if fully set forth herein.

94.) Plaintiff was a person with a disability under the Americans with Disability Act (ADA) and §504 of the Rehabilitation act of 1974. He suffered from mental health disorders, including depression paranoia, bipolar, and schizophrenia, and was at risk for suicide.

95.) FDOC is a public entity that must comply with §504 and the ADA. The

96.) Wexford Health sources Inc, is a private entity but entered into

46.

97.) A contractual agreement with FDOC to abide by all state and federal laws and assumed personal liability for any violations of the same.

98.) Plaintiff is entitled to relief against Julie Jones, as Sec of FDOC, Wexford Health sources Inc, as contractors with FDOC, Tom Reimers as health service Director, John Doe Asst for health services, Lee as Regional medical Director, and Jane Doe as warden of Martin C.I. Because Wexford, the Department, and Institution had notice of plaintiff's disability, had the means to reasonably accommodate his disability, and failed to make that reasonable accommodation. The FDOC, and Wexford, and Martin have been and are recipients of federal funds.

99.) Section 504 of the Rehabilitation Act requires recipients of federal funds, including the Florida Department of Corrections, and Martin, and Wexford to reasonable accommodate persons with disabilities in their facilities or under their care, programs activities, and services. It further requires such recipients to modify such facilities, services, and programs as necessary to accomplish this purpose.

100.) Defendants failed to take necessary steps to ensure that no individual with a disability is excluded denied services, segregated, or otherwise treated differently than other individuals because of the absence of services for the disabled. Such services include, inter alia, provisions necessary to achieve effective mental health care and avoid victimization by others.

101.) Instead of accommodating plaintiff's needs, Defendants denied him services and programs available to others that could have protected him from harm. The failure to accommodate plaintiff's disability was intentional and/or deliberately indifferent to plaintiff's rights under §504 and Title II of the ADA and was the proximate cause of his injuries.

4G

102.) The actions and omissions of defendants violated the ADA and §504. moreover, these acts and omissions by defendants, their agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to plaintiff and proximately caused injuries to plaintiff

4d

   ☒    Convicted and sentenced state prisoner

   ☐    Convicted and sentenced federal prisoner

   ☐    Other *(explain)* _____

## IV.   Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    If the events giving rise to your claim arose outside an institution, describe where and when they arose.

_____
_____
_____

B.    If the events giving rise to your claim arose in an institution, describe where and when they arose.

*SEE Attached Continuation Sheet*
_____
_____

C.    What date and approximate time did the events giving rise to your claim(s) occur?

*SEE ATTAched Continuation Sheet*
_____
_____

D.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*See Attached Continuation Sheet.*
_____
_____

STATEMENT OF CLAIMS B, C &, D.

1.) On February 13, 2017 plaintiff was transfered to Martin C.I. from Charlotte C.I.

2.) On or about Jan. 23, 2017 plaintiff was released from Disciplinary confinement. While housed in confinement plaintiff was consistently receiving his psychotropic medication of Tegretol, Risperdal, and Zoloft.

3.) Due to plaintiff being released from confinement plaintiff ~~Bace policy so~~ had to wait until the nurses transfered his meds. from confinement delivery back to open population window pick up.

4.) Plaintiff did attempt several times to receive his psych. meds at the Pill window while in open population. But each time he was informed by the duty nurse that his meds. had not been transfered yet.

5.) On or about Jan. 29, 2017, plaintiff was attacked by several gang-members and stabbed approx. five times with a knife in the head.

6.) On Jan. 30, 2017 plaintiff was placed in Protective management pending investigation and transfer.

7.) Plaintiff has a clinical diagnosis of depression, bi-polar, and schizophrenia.

8.) While in confinement plaintiff ~~suff~~ begin to suffer a mental health breakdown. Directly due to the unnecessary and vicious violence plaintiff endured which did exasperate his mental illness.

9.) Plaintiff learned while in confinement that his psychotropic meds. ~~ak~~ been Discontinued (DC) due to plaintiff missing three or more dosage of his meds, since his release from confinement on or about Jan. 23, 2017.

10.) Plaintiff submitted an inmate request to the psychiatrist DR. M. McClure. Plaintiff was examined by DR. McClure. Plaintiff

5A

explained to DR. McClure that not once during said period did he deliberately refused his psychotropic meds. But because plaintiff was discharged from confinement back to general population said meds had to be transferred back to the pill window nurse. which usually takes a minimum of three days. Because plaintiff missed the maximum three days period his meds was automatically inadvertently D.C.

11.) Plaintiff explained to Dr. mcClure that another attempt had been made on his life at Charlotte C.I. by multiple gang-members that he was assaulted with a weapon back in August of 2015 by a gang-member while at C.C.I. that since his stay at C.C.I. he had been subjected to violence intimidation, extortion, assault, and that he was needed his psych. meds renewed because he was having a mental health breakdown and life crisis.

12.) Defendant mcClure assured plaintiff that he was going to renew this all of his psych. meds and further prescribe plaintiff Tegretol.

13.) Defendant mcClure was aware of plaintiff mental health history and mental illness. To include plaintiff setting himself and his cell on fire. Plaintiff attempting multiple suicides. By hanging himself; jumping off two story buildings; overdose intentionally overdosing on medication; swallowing and inserting foreign objects into his abdomen, Requiring life saving surgery; cutting the veins on his wrist with a razor; Banging his head on the wall; multiple use of forces by the correctional officers (c.o.) et cetera.

14.) Defendant mcClure was aware of Plaintiff's incarceration since the age of seventeen. That plaintiff was severely de undergoing persistent depression, bi-polar, paranoia, and schizophrenia. And that plaintiff had been prescribed and receiving const psychotropic drugs for the

5b.

betremention symptoms. since 2010.

15.) On Feb. 14, 2017 plaintiff was transferred from C.C.I.
on Feb. 15, 2017 plaintiff arrived at Martin C.I. (M.C.I)

16.) FOOC policy and procedure requires that when a
prisoner transfer from one prison to another all of the
prisoners medications are to be transported with him.

17.) Plaintiff receive spent one night at South Florida
Reception center. plaintiff did receive his psych. meds
while there

18.) Upon plaintiff's arrival at M.C.I senior psychologist Ms.
Sikilia delivered the orientation speech concerning mental health
and how to access the same. Plaintiff informed defendant
Silcilia that about the history of his meds. being Discontinued
and supposedly renewed. Defendant informed plaintiff that what-
ever meds. he was receiving at his previous institution should
have followed him to the present institution and for plaintiff
to show up at meds. call to the pill window to receive his
meds.

19.) For the remaining month of February plaintiff appeared at the
meds. window to receive his psychotropic drugs. everyday. But
each day. plaintiff was informed by the duty nurse that he did
have psychotropic medication but it had not been delivered to
the pill window nurse yet.

20.) Plaintiff was assigned psychologist A. caddle Logan as his
mental health counsel. And T. Rawson as his psychiatrist.

21.) Plaintiff was placed on the call-out to see Mrs. Logan and
Dr. Rawson several times.

22.) Plaintiff was able to see defendant Logan and converse
with her on a couple of occasions. plaintiff conveyed to
defendant Logan the extreme violence he was subjected to at
G.C.I. and bullying. plaintiff did convey to defendant that he
was experiencing a mental health breakdown and needed his

psychotropic drugs to cope with his mental illness. Plaintiff did convey to defendant that he needed to see Dr. Rawson. defendant assured plaintiff that she had conveyed plaintiff's concerns to defendant Rawson.

23.) Plaintiff attempted a few times to see Dr. Rawson but eighter defendant was unaviable and/or due to M.C.I. disorganization and lack of structure, plaintiff was unfortunate unable to be seen by defendant Rawson.

24.) From March to April 2017 plaintiff would periodically appear at the pill window and inquire to the nurse concerning his psych. meds. The duty nurse would inform plaintiff that said meds. had not arrived yet, but they would look into it.

25.) Plaintiff did stop the warden defendant Jane Doe and major on one or two occassions and presented his grievance concerning his medications to them. Plaintiff was informed by both parties to write an inmate request or grievance to mental health and if such could not work to declare a psychological emergency.

26.) Plaintiff did both on several occassions. Plaintiff's grievance concerning his meds. was unsuccessful.

27.) Plaintiff declare a psychological emergency a minimum of four times. Two in the middle of the night and two during business hours.

28.) Plaintiff's mental health emergency was only honored once. Plaintiff was seen by defendant Logan on or about April 2017

29.) Plaintiff conveyed to defendant Logan that he was experiencing a moderate impairment of inadaptive functioning due to his serious mental illness such as schizophrenia, bipolar disorder, and major depression. And that said symptoms had been exasperated by the extreme violence plaintiff was subjected to at C.C.I.

5d.

30.) Plaintiff conveyed to defendant Logan and defendant warden Jane Doe, that he felt sometimes suicidal. Sometimes homicidal. And that he was hearing voices and paranoid.

31.) Plaintiff conveyed to each defendant that he was severely depressed and needed ~~psych meds~~ his psych. meds. renewed immediately and was starting to suffer certain side effects and experiencing withdrawals as a direct result of the sudden cessation of his psychotropic medication. Both defendant Logan and warden Jane Doe took no remedial action.

32.) Defendant Rawson never made any meaningful attempt to see plaintiff. Defendant Rawson was aware of the persistent disorganization at M.C.I. and knew that he possessed the responsibility and authority to contact security and demand that plaintiff be brought to him so that he could examine plaintiff concerning his medication and psychological emergencies.

33.) plaintiff would later learn that defendant Rawson (routinely arbitrary discontinued all new prisoners) psychotropic drugs ~~with~~ contrary to FDOC policy and practice. Without first examining said patient or without consideration of the adverse effect that sudden cessation of a patient's psychotropic drugs will have on that particular patient's physical and mental health.

34.) In April of 2017 plaintiff was physically beaten by several gang-members at M.C.I due to exhibition of his mental illness. Plaintiff sustained bruising ~~and~~ scarring, and swelling to his face, head, right arm and leg.

35.) On April 14, 2017 plaintiff was apprehended with a homemade knife by his dorm sgt. Plaintiff begin carrying a knife around due to the gradual deterioration of his mental capacity.

36.) Plaintiff became confused, disorganized, disoriented, and frightened. Paranoid, distrustful, schizophrenic, and fearful.

37.) On or about April 15, 2017, while in confinement. Plaintiff was subjected to social isolation, sensory deprivation, and forced idleness. which did exacerbate plaintiff's said acute symptoms.

38.) In the middle of the night, Plaintiff attempted suicide by hacking the vein between the crook of his elbow with a dull razor requiring approximately twelve sutures.

39.) Plaintiff was transferred to medical and placed in a suicide cell on self harm observation watch (SHOC)

40.) On or about April 17, 2017, plaintiff feeling extremely depressed, acute impairment, psychological distress, frustration, and feelings of powerlessness. removed the sutures from his arm and begin hacking again into the vein of his left arm. Bwith the same dull razor.

41.) Defendants utterly failed to search plaintiff, to confiscate the razor, Plaintiff was using to harm himself. Defendants were eighter deliberately indifferent, unconcerned, and callous towards plaintiff's mental illness, and the tool he was using to inflict self harm.

42.) Defendants' through their actions and omissions encourage, condone, and turned a blind eye to plaintiff's persistent and repeats blatant attempts to kill himself and the means by which he used to achieve that said goal.

43.) From April 15, through April 21, 2017 plaintiff persistently and consistently attempted to kill himself by hacking into his veins with the same razor he transported from confinement to SHOC. Defendants never inquired to plaintiff concerning the means he used to attempt suicide or attempted to search plaintiff's person for the same.

5A

44.) plaintiff inflicted deep wide lacerations unto his self a minimum of seven times. Even cutting both the left and right side of his neck.

45.) Plaintiff's suicide attempts were sometimes gradual and sometimes sudden. Transpiring between business hours and in the middle of the night.

46.) At all times during plaintiff stay on SHOC defendants would against policy and procedure assign unqualified and uncertified correctional officers (C.O) with absolutely no crisis intervention training (C.I.T) to supervise plaintiff.

47.) Said C.O's were also responsible for conducting SHOC fifteen minute checks on plaintiff instead of the duty nurse.

48.) Plaintiff asserts that defendants unconstitutional policy and practice of assigning unqualified and uncertified C.O's to work alone and supervise plaintiff and perform each SHOC fifteen minute check contributed to plaintiff's injuries.

49.) Because said unqualified and uncertified C.O's could not determine and lack the training to observe a patient's transition from one level to another. This transition could be gradual or sudden and while certain variables can be triggers for changes; (such as receiving upsetting news, involvement in an altercation with a staff member, nurse, or another patient. or having a medication adjustment). other times change can occur for no apparent reason. Said C.O's lack the training to prevent patients' on suicide watch from attempting to kill themselves. And on more then one occassion plaintiff was encourage by staff to commit suicide.

50.) Patients such as plaintiff suffering acute impatient and psychological distress persistently attempted suicide by cutting themselves with sharp objects. without the benefit of having a clinical personal properly and sufficient trained in the diagnosis of a mentally ill patient utilize prevention measures.

51.) Defendants, Guidotti, Logan, Rawson, Silcilia, Patten, and Wetterer were eighter present or made aware of each of the seven times plaintiff attempted suicide by cutting his vein with a dull razor inflicting deep and wide lascerations on his person. Requiring sutures.

52.) Defendants Patten and Wetterer conveyed to plaintiff that they were tired of plaintiff suicide attempts and done with furnishing plaintiff medical treatment (sutures) for his lascerations.

53.) Defendants Patten and Wetterer were both responsible for plaintiff's medical treatment, Defendants deliberately denied plaintiff adequate medical treatment, but instead applied a less expensive and deficient course of treatment.

54.) Defendants prescribe wound care to plaintiff's attempted suicidal injuries instead of sutures. Would care is when A nurse placena partially disinfect the lascenation. Apply a bandage over the lascenation and apply tape around the bandage. Said course of treatment is applied once per day. The ideal is to allow the body to heal itself.

55.) However, said course of medical treatment is inadequate and grossly deficient. And exposes a patient to a substantial risk of serious harm.

56.) Plaintiff would later develope a serious kidney infection requiring medical treatment and Tinea cruts also requiring medical treatment as a direct result of defendants deliberate indifference to plaintiff's serious medical needs.

57.) Defendants prescribe medical course of treatment of wound care instead of the universally accepted medical practice of sutures. Further encourage and facilitated plaintiff's suicidal ideations and attempts.

58.) Defendants Logan, Rawson, Silcilia, Guidotti, Patten, and Wetterer conversed with plaintiff daily and inquired about

Case 4:19-cv-00047-WS-MAF   Document 1   Filed 08/09/18   Page 21 of 41

plaintiff's mental health. Plaintiff conveyed to each defendant on multiple occasions the nature and genesis of his mental illness and the proper course of treatment. Renewal of his psychotropic medications.

59.) Each said defendant although having the responsibility and authority to either renew plaintiff's psych. meds. or properly influence the psychiatrist to do so. Took no remedial action to furnish plaintiff adequate medical treatment.

60.) Each defendant was fully aware of plaintiff's history of mental illness. And that plaintiff was consistently receiving his psychotropic medication up until his arrival at M.C.I. When Dr. Rawson arbitrarily discontinued plaintiff's medication without first examining him or consulting him.

61.) On April 21, 2017, plaintiff decompensating and experiencing acute mental impairment again attempted suicide by hacking into the vein of his left wrist. Causing a very deep and wide lasceration requiring sutures.

62.) Plaintiff inflicted said injury to himself around 5:30 A.m. Duty nurse R.N. Horyn, Guidotti; were present. Rawson, Silcilly, Patten, and wetterer were made aware of plaintiff's lastest suicide attempt upon coming to work around 7-8:00 A.m.

63.) Defendant Horyn berated and encouraged plaintiff to die. Defendant Horyn utterly failed to render any medical treatment to plaintiff. Defendant Horyn left plaintiff in the cell bleeding and crying. Defendant Horyn went home unconcerned about plaintiff's health or safety. Defendant Guidotti was present.

64.) Plaintiff lost a substantial amount of blood. Plaintiff's cell window, floor, and wall was covered in blood. Plaintiff felt weak, disoriented, and dizzy.

65.) Defendants Patten and wetterer arrived on shift. Was informed by security that plaintiff was bleeding profusely. Defendants responded "to let him die." They were utterly

5I.

refused to render plaintiff any medical treatment for his serious medical need.

66.) Plaintiff did not receive any medical treatment until approximate noon time as best as he recalls. By the duty nurse. Despite said wound obviously needing sutures to stop the bleeding, only wound care was proscribe as the course of treatment. As a direct result said injury would unnecessarily take over thirty days to completely heal.

67.) Defendants Guidotti, Rawson, and Silcilia possessed a legal responsibility owed to plaintiff to ensure that plaintiff received prompt and adequate medical treatment.

68.) Plaintiff was left bleeding in his cell for a minimum of five hours or more. Plaintiff was crying, depressed, and experiencing intense physical pain and suffering.

69.) Plaintiff's cell was partially cleaned by the medical orderly who was not blood certified to do so. Matter of factly, after each suicide attempt, Plaintiff's cell was primarily partially cleaned by the medical orderly who was not blood certified to do so.

70.) Plaintiff learned on or about April 22, 2017 from the duty nurse and security that the secretary of FDOC Julie Jones suspended Wexford Health sources, Inc. cont medical contract with FDOC. After conducting an audit at a prison down south. It was learned that Wexford falsified medical documents by documenting that nearly thirty patients who were on psychotropic medications and supposedly receiving the same was actually not receiving their meds from Wexford.

71.) Plaintiff believes he was a victim of Wexford, collision, fraud, and deceit. To save money. By illegally removing or discontinuing patients psych. meds, without consideration of the substantial risk of serious harm posed to the patients health and safety.

5J

~~CROSSED OUT TEXT~~
~~CROSSED OUT TEXT~~

72.) Defendant Rawson recommended Plaintiff for CSU/TCU treatment. ~~Plaintiff was~~ on or about April 2017

73.) Plaintiff was discharged from TCU on or about July 2017 and transfered back to Martin C.I.

74.) Again Plaintiff was denied the necessary adequate mental health treatment for his diagnoses.

75.) From August 22, 2017, up until October 02, 2017. Plaintiff made repeated attempts and request to defendant Rawson, Lee, and Bryner to place plaintiff back on his psychotropic medication. Plaintiff informed each defendant that being housed in confinement for an extended period of time was making him depress and suicide. Defendants took no curative action.

76.) On or about September 13, 2017. Plaintiff submitted a sick call request to mental health. Pleading for help Plaintiff informed mental health that he was hearing voices telling him to kill himself and that Plaintiff was having suicidal ideations.

77.) Plaintiff was interviewed by mental health specialist Ms. Lee. In which she advised Plaintiff that Dr. Rawson was aware of Plaintiff situation and was going to interview Plaintiff in a couple of days.

78.) Plaintiff informed Ms. Lee that he was interviewed by Dr. Rawson on or about August 2017. In which Mr. Rawson promised Plaintiff to renew his psychotropic medication but had not done so.

~~CROSSED OUT TEXT~~

79.) An argument between Plaintiff and Ms. Lee ensued. Plaintiff informed Ms. Lee that he was going to commit suicide if mental health services continued to failed to treat

Plaintiff for his mental illness.

90) Ms. Lee retorted that she didn't believe Plaintiff was going to kill himself. And to do so.

75) Plaintiff responded that he was the one and do not bluff him.

91) Ms. Lee Responded, that "Show me you are the one".

92) Ms. Lee did encourage and provoked plaintiff to commit suicide.

83) Contrary to DOC policy Ms. Lee was supposed to have had plaintiff placed on SHOC and not encourage plaintiff to commit suicide.

94) As a direct result of defendants deliberate indifference towards plaintiff serious mental health needs. On September 20, 2017. Plaintiff made one last attempt to receive help from defendants. Plaintiff submitted a sick call request that was received by defendant Logan on Sept. 20, 2017.

85) Plaintiff again pleaded with mental health staff to help him that he was feeling suicidal and hearing voices. No remedial actions were taken. Contrary to defendants policy and practice defendants failed to interview plaintiff on said date or place plaintiff on SHOC.

86) On Sept. 20, 2017 around 8:00 P.M. Plaintiff deliberately overdose on pills in an attempt to commit suicide.

87) Plaintiff had to be taken to the hospital. Treated for acute kidney and lung failure. Plaintiff had to be placed in a medically induced coma for about four days in order to preserve his life.

88) Plaintiff was treated in ICU for five days. And in the hospital for seven days.

89) Plaintiff develope pneumonia in his lungs while in said coma. Plaintiff suffered intense physical pain, hopelessness, fear of dying, and despair and manic depression.

5k

90.) The hospital doctors miss failed to diagnose plaintiff with permanent nerve damage to both his foot and arms. And retinal hemorrahaging and infection in plaintiffs right eye. causing Plaintiff to go blind in said eye and suffer excruciating physical pain and psychological distress. And a significant disruption in his everyday life.

91.) Defendants have deliberately delayed providing medical treatment for plaintiffs physical injuries. Since his suicide attempt in september, resulting in said injuries. Plaintiff has endured intense excruciating physical pain and psychological distress resulting in plaintiff attempting suicide several more times since then. To include refusing to eat for approximately ninedays. overdosing on pills again etc. Repeated attempts of suicide.

92.) Plaintiff has been recommended and placed on csu/tcu three times since september. Defendants have deliberately failed to provide the necessary and adequate treatment addressing plaintiffs mental health needs.

93.) Defendants having the means and resources to provide the necessary treatment addressing plaintiff mental health needs has deliberately failed to do so.

94.) Plaintiff was lastly discharge from csu/tcu on Due February 2018. Plaintiff lost his last remaining parent (Father) in August of 2017.

95.) Plaintiff has not received the necessary long term inpatient mental health treatment and psychotropic medication necessary to address plaintiff's mental health needs. And acute manic-depression.

96 Plaintiff is in serious risk of great bodily harm, or death. Plaintiff's mental health condition has deteriorated so bad. Plaintiff contemplates committing suicide everyday. Has informed defendants of such

5A.

to no avail. Defendants have taken no action or have taken the least expensive course of action.

97.) Plaintiff avers that his death is imminent, due to his mental illness. And defendants actions and omissions.

98.) Avers that he is in constant physical, and psychological pain from his physical injuries as a direct result of defendants failure to provide adequate medical treatment. These injuries can become permanent.

99.) Plaintiff avers that his physical condition has worsen and continue to do so. If this Hon. Court fails to intervene

100.) Plaintiff avers that he could loose, permanently vision in his right eye. If not promptly treated. And mobility in his left knee. Continuous suffering of extreme and excruciating pain in both foot and arms. And debilitating health. Plaintiff is in imminent danger of great bodily harm.

101.) Defendant, Centurion / MHM is contracted with FDOC to provide constitutionally adequate medical and mental health services to all prisoners.

102.) Defendant, Centurion / MHM developed and/or implemented a policy and practice. And or failed to properly train its employees to recognize a patient suffering from mental illness and suicidal ideation and how to properly treat such diagnoses.

103.) Defendant violated DOC long standing policy and practice as applied to Plaintiff when they failed to properly train its employees or implemented a policy and practice for its employees to ignore a patient proclaimation of suicidal ideation. And to ignore DOC policy and practice to interview a patient and place said patient on suicide watch if that patient expresses suicidal ideations. As such defends are liable to Plaintiff for damages

104) Defendant Wexford Health sources, Inc, deliberately devised a policy and practice to deprive mentally ill prisoners, such as plaintiff of their psychotropic medications. Defendants were deliberate indifferent to plaintiff's medical condition and the likely consequences of that condition.

105) Defendant Wexford knew of the substantial risk of serious harm their unconstitutional policy and practice posed to patients such as plaintiff. Defendant flagrantly disregard the risk of danger to prisoners plaintiff health and safety.

106) Defendant wexford applied it policy and practice of discontinuing patients' psychotropic drugs and or depriving patients of said necessary medical treatment in a way that was a reasonably foreseeable consequence that patients such as plaintiff would commit suicide or attempt the same.

107.) Defendants Julie Jones, D. Snider, J. Holtz, Lee, and John Doe assistant secretary for health services. were policy makers charged with care and custody of prisoners, like plaintiff who were held at M.C.I, and with providing them with basic necessities of life, including adequate mental health and medical medical treatment.

108.) Defendant Jane Doe, Warden, J. Jones, D. Snider, J. Holtz, Lee, and John Doe, asst sec. For health services. are charged with abdicating their duty to supervise and monitor the treatment of the mentally ill and deliberately permitting a pattern of by private corporations to deprive, discontinue, and or delay the psychotropic medications of the mentally ill. And flagrantly disregarding an objective substantial risk of serious harm to patients, such as plaintiff.

109.) Defendants Jane Doe, Jones, Snider, Holtz, Lee, and John Doe had past notice of past culpable conduct conduct of subordinates and private contrators charged with providing medical and mental health care to prisoners of serious conditions posing substantial threat of serious harm to prisoners and

50.

failed to prevent recurrence of such misconduct.

110.) Defendants, Horyn, Guidotti, Patten, and wetterer knew that plaintiff was undergoing a mental health crisis, and was mentally ill. And knew that plaintiff needed his psychotropic drugs, and possessed influential authority to furnish said treatment.

111.) Defendants, Horyn, Guidotti, Patten, and wetterer knew that the course of treatment of wound care was constitutionally inadequate for deep and wide lascerations requiring sutures. Defendants applied a less expensive and tedious course of treatment that subjected plaintiff's health and safety to a substantial risk of serious harm.

112.) Plaintiff developed several infections as a direct result of defendants deliberate indifferent to plaintiff's serious medical needs and future health.

113.) Defendants also knew that wound care on a suicidal patient such as plaintiff would encourage and facilitate his efforts to inflict harm on himself. Defendants utterly failed to furnish plaintiff adequate medical treatment solely due to his mental illness.

114.) Defendants adopted, developed, and implemented "the extford" medical policy with deliberate indifference to the medical needs of plaintiff after his numerous failed suicidal attempts.

115.) Defendants Logan, Silcilia, Rawson, and mcclure, were responsible for coordinating the provision of medical and psychiatric care for plaintiff. Defendants were aware of plaintiff's mental health history and illness. knew plaintiff was undergoing a mental health crisis and experiencing grave pain and psychological distress. Defendants knew that the course of treatment for plaintiff's mental illness was his psychotropic medication and long term treatment in crisis stabilization unit (CSU) and Transitional care unit (TCU)

84.) Defendants were aware of the substantial risk of

serious harm posed to plaintiff's health and safety by sudden cessation of his psychotropic medication.

116) Defendants adopted, developed, and implemented Wexford' policy with deliberate indifference to the medical needs of plaintiff and his future health. Defendants continued to disregard the excessive risk of serious harm to plaintiff's health and safety, etc even after being notified of plaintiff's medical need of his psychotropic drugs and the threat to his safety that defendants policy and practice of discontinuing, depriving, or delaying a patients' medications solely based on the mere fact that he transferred from one prison to another posed on a prisoner's health.

117) Each defendant is being sued in their individual and official capacity.

118) As a direct and proximate result of the wrongful acts alleged herein, plaintiff suffered bodily injury and resulting pain and suffering, disability, aggravation of existing injuries, humiliation and mental anguish. These injuries and losses are permanent and continuing. And plaintiff will suffer such losses in the future moreover, plaintiff's mental health condition will deteriorate to a level requiring forced impatient treatment into a crisis stabilization unit facility. And the renewal of his psychotropic medications. Plaintiff will require a minimum of three months on (CSU) and intensive care treatment to stabilize.

_____

_____

_____

_____

_____

**V.     Injuries**

If you sustained injuries related to the events alleged above, describe your injuries and state
what medical treatment, if any, you required and did or did not receive.

Extreme psychological distress, bruising, scaring, swelling, weight
lost, denial of exercise, sharp chest pain, anxiety attacks,
paranoia, fear of death. Pronounce swelling to arms, neck, leg and right
arm, mouth and head. Lost of blood and intense physical pain. Feelings of
intense helplessness, suicidal ideations. Long term social isolation
and disorder, sensory deprivation and forced idleness. Exacerbations
of pre-existing injuries, kidney infection and Tinea cruis, sleep
deprivation, permanent nerve and tissue damage. plaintiff didn't receive

**VI.    Relief**

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any
cases or statutes.  If requesting money damages, include the amounts of any actual damages
and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Preliminary injunction against Wexford Health Sources, Inc, and
Julie Jones for the continuous denial of adequate medical treatment
2.) Compensatory and punitive damages in the amount of Ten million dollars
3.) A jury trial on all issues so triable 4.) cost of this action 5.) And any other
relief this court deems proper, just and equitable. Appointment of counsel

**VII.   Exhaustion of Administrative Remedies Administrative Procedures**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action
shall be brought with respect to prison conditions under section 1983 of this title, or any other
Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such
administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be
dismissed if you have not exhausted your administrative remedies.

═ INSURIES ═

Sutures for his injuries or mutilated arm. ~~xxxxxxxxxxxx~~
or blood testing for infections. Plaintiff suffered bodily injury
and resulting pain and suffering, disability, humiliation, and
mental anguish. These injuries and losses are permanent and
continuing, and plaintiff will suffer such losses in the future.
Lost of vision, Pneumonia, Permanent nerve damage. And
Seizures.

6A,

A.   Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑   Yes

☐   No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_MARTIN C.I._

B.   Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑   Yes

☐   No

☐   Do not know

C.   Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑   Yes

☐   No

☐   Do not know

If yes, which claim(s)?

_8th Amend claim. Deliberate indifference claim, Not monetary_
_Damages_

D.   Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☑   Yes

☐   No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☒  Yes

☐  No

E.    If you did file a grievance:

1.    Where did you file the grievance?

_While At CHarlotte C.I. And Dade C.I, Lake C.I._

2.    What did you claim in your grievance?

_Deliberate indifferent to my serious mental health and medical needs._

3.    What was the result, if any?

_Approved In part, denied In part_

4.    What steps, if any, did you take to appeal that decision?  Is the grievance process completed?  If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

_Appealed to the highest level_

F.      If you did not file a grievance:

1.      If there are any reasons why you did not file a grievance, state them here:

N/A

2.      If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

N/A

G.      Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☑   Yes

☐   No

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

_Plaintiff had two civil Rights Actions dismissed one for maliciuus and one for Failure to state a claim upon which relief could be granted_

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☒ Yes

☐ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.   Parties to the previous lawsuit

Plaintiff(s)   _PROPHET PAULCIN_

Defendant(s)   _Julie Jones, et al_

2.   Court *(if federal court, name the district; if state court, name the county and State)*

_Middle District_

3.   Docket or index number

_2:17 CV-232-FTm-99MRm_

4.   Name of Judge assigned to your case

_MAC R. mcCoy_

5.   Approximate date of filing lawsuit

_MAY 2017_

6.   Is the case still pending?

☑ Yes

☐ No

If no, give the approximate date of disposition. _____

10

7.    What was the result of the case?  *(For example:  Was the case dismissed?  Was judgment entered in your favor?  Was the case appealed?)*

*Still pending*

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☒    Yes

☐    No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)  *PROPHET PAWLOW*
Defendant(s)  *michael D. Crews, et al,*

2.    Court *(if federal court, name the district; if state court, name the county and State)*

*MIDDLE DISTRICT OF JACKSONVILLE.*

3.    Docket or index number

*3:12-cv-516-J-BJ0-PDB*

4.    Name of Judge assigned to your case

*Do Not Remember No longer in Possession of Documents*

5.    Approximate date of filing lawsuit

*MARch 2012*

6.    Is the case still pending?

☐    Yes

☒    No

11

PARTIES TO PREVIOUS LAW SUIT

Plaintiff: PROPHET PAULCIN

Defendants Walter McNeil et al.,
Nurthern District
3:09 CV 493-LAC-EJK
Charles J. Kahn Sr.
  Defendants sprayed plaintiff with chemical agents and placed him
on strip for three days in retaliation for tempering with a locking
devise in violation of plaintiff 8th Amend right to the U.S. const.
Approx. filed 2010
Voluntarily dismissed August 24, 2012
   Plaintiff avers under oath that Department staff lost his legal property
containing said information. Plaintiff does not recall the specifics.
Plaintiff is indigent and does not have the resources to acquire
said information. Plaintiff asserts that defendants will not be
prejudice by the non-disclosure of said info at this time. Plaintiff does
not waive any rights or priviledges to amend or supplement the
record with said info. once he is furnished with it. If this
Hon. Court so desires, Plaintiff admits to having three strikes
against him. See Attached Documents
Continuation of Question B.
Name of case PAULCIN v Secretary, Florida Department of Corrections et al
CASE Number 1:17-CV-22916-CMA
U.S. District court southern District
Judge Patrick A. White / case closed by the District Judge.
Dismissed without Prejudice

11A

If no, give the approximate date of disposition. *MAY 14, 2015*

7.   What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

   *Settlement*

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: *09/30/*            , 20 *18*

Signature of Plaintiff   *Prophet Paulc~*

Printed Name of Plaintiff   *PROPHET PAULCIN*

Prison Identification #   *W11537*

Prison Address   *Wakulla C.I. Annex 110 Melaleuca Dr.*

   *Crawfordville*              Florida              *32327*
   City                         State              Zip Code

### B.   For Attorneys

Date of signing:            , 20__

Signature of Attorney      _____

Printed Name of Attorney   _____

Bar Number                 _____

Name of Law Firm           _____

12

Address       _____

Telephone Number    _____

E-mail Address     _____

— UNNOTARIZED OATH —
    I hereby declare under the penalty of perjury
Under U.C.A § 1746 that the foregoing facts are true
and correct.

<u>Raphael Paulk #WII537</u>
Signature of Plaintiff

<u>07/30/18</u>
DATE

PROPHET fFAULCIN DC#W11537 51207
WAKULLA CI - ANNEX
110 MELALEUCA DRIVE
CRAWFORDVILLE, FL 32327

USPS INSPECTED

UNITED STATES DISTRICT COURT
Clerks office
301 Simonton st
Key west, FL 33040

LEGAL MAIL
Provided to
Wakulla CI

JUL 3 0 2018

FOR MAILING