**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**PROPHET PAULCIN,**

    **Plaintiff,**

**vs.**                                                        **Case No. 4:19cv47-WS/CAS**

**MARK S. INCH, et al.,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

This case was initiated in the Southern District of Florida, ECF No. 1, based on Plaintiff's complaint against Wexford Health Services, Inc., the Secretary of the Florida Department of Corrections, Health Services Director Tom Reimers, and numerous other prison officials from Martin Correctional Institution and Wexford Health Services. ECF No. 1 at 3-6. During the pendency of that proceeding, Plaintiff filed a motion for a temporary restraining order, ECF No. 10. Because Plaintiff sought redress for claims which were separate from the claims presented in Plaintiff's initial complaint, ECF No. 1, and because Plaintiff was located at Wakulla Correctional Institution which is within the Northern District of Florida, the

motion was transferred to this Court. ECF Nos. 11, 15. The underlying § 1983 complaint, ECF No. 1, was not transferred. Moreover, just prior to Plaintiff's filing of the motion, ECF No. 10, Plaintiff had been directed to file an amended complaint. ECF No. 7.

Upon this case being opened, Plaintiff was required to file an in forma pauperis motion, ECF No. 18, which he did, ECF No. 19. Plaintiff was granted in forma pauperis status,[1] ECF No. 20, as he demonstrated that he lacked the financial ability to pay the filing fee for this case and he had alleged that he was "in threat of imminent death or great bodily harm" after arriving at Wakulla Correctional Institution Annex on February 28, 2018. ECF No. 10 at 1, 10. Plaintiff was also required to file an amended complaint in this new case. ECF No. 20. Plaintiff did so in late March 2019, ECF No. 21, but it was insufficient to properly state a claim. *See* ECF No. 22. Plaintiff was required to file a second amended complaint, no longer than 25 pages, but which presents specific facts rather than conclusory allegations.

---

[1] Plaintiff is a "three striker" under § 1915(g) and has acknowledged that fact. *See* ECF No. 21 at 9.

Subsequently, Plaintiff has filed a notice of change of address, ECF No. 23, which reveals he has been moved from Wakulla Correctional Institution and transferred to Florida State Prison. More recently, Plaintiff also filed a motion requesting leave to exceed the 25 page limit, ECF No. 24, and he simultaneously submitted the proposed "second amended complaint." ECF No. 25. For purposes of proceeding expeditiously, the motion, ECF No. 24, is granted and the second amended complaint, ECF No. 25, is accepted for filing.

Accordingly, the posture for Plaintiff's filing of his motion for temporary restraining order, ECF No. 10, is unusual. The motion was separate and apart from the initial complaint filed in the Southern District, and it is not anchored to the second amended complaint, ECF No. 25, recently filed in this case.

The motion relates Plaintiff's mental health diagnoses and his transfer to Charlotte C.I. in 2015. ECF No. 10 at 3. After several attacks by other prisoners, Plaintiff was transferred to Martin Correctional Institution in February 2017, *id.* at 4, where he was again the victim of prison violence. *Id.* at 5. In August 2017, he was placed in administrative confinement pending review for protection and was evaluated by

Dr. Rawson, who Plaintiff contends failed to renew his psychotropic medication. *Id.* at 6-7. Plaintiff further alleges that "Ms. Lee," who is part of the "mental health staff," began "to provoke and encourage [Plaintiff] to commit suicide." *Id.* at 7. Although Plaintiff reported having suicidal ideations and other issues to the duty nurse, no help was provided and Plaintiff attempted to "deliberately overdose on dangerously toxic pills." *Id.* Following his release from the hospital, Plaintiff was transferred to Lake Correctional Institution on October 4, 2017. *Id.* at 8. He alleges that his "treatment was abruptly stopped" and he "attempted suicide several" more times. *Id.* It appears that he was returned to Charlotte Correctional Institution. *Id.* He alleges that the medication Welbutrin had been used in his treatment, but the "DOC discontinued the distribution of" that drug. *Id.* at 9. He indicates that his clinical physicians recommended certain treatment that has been impeded by the DOC's actions. *Id.*

Plaintiff motion details various mental health diagnoses and medications prescribed. *Id.* at 9-10. When Plaintiff was transferred to Wakulla Correctional Institution, however, an unidentified physician discontinued Keppla, a seizure medication apparently prescribed for Plaintiff's "epilepsy or epilepsy like symptoms." *Id.* Plaintiff alleged that the

Defendants "also discontinued furnishing [him] any medical and mental health treatment" without a medical justification. *Id.* at 10. Plaintiff spoke with ARNP Key who told Plaintiff that she would not provide him with medical care because he had written grievances against her. *Id.* at 10-11.

Plaintiff alleges he faces imminent death or great bodily harm due to the lack of medical care. *Id.* at 11, 12. Plaintiff says that he continues to suffer physical pain due to several injuries, as well as "intense fear, hopelessness, despair, anxiety, and physical pain as a result of defendants discontinuation of [his] epileptic medication." *Id.* Plaintiff says that he still has seizures and had one "such attack" in July 2018. *Id.* at 11.

Plaintiff also alleges that he had been placed on permanent protective management (PM) status. *Id.* at 12. Plaintiff states that prisoners have a right to waive such status and be released into the general population of a particular prison if they feel it "meets their security needs." *Id.* Plaintiff alleges that he attempted to do so, but "Defendants have continued to hold [him] hostage" and have not released him from PM. *Id.* Plaintiff contends that PM housing at Wakulla C.I. is an "open dormitory" and he is housed with gang members who are from the same gang that victimized him previously. *Id.* at 14.

Case No. 4:19cv47-WS/CAS

He also states that he had "gone nearly a year without any Disciplinary Reports (DR) before" his transfer to Wakulla C.I., but that since arriving, he has received two Disciplinary Reports and was recommended for close management. *Id.* at 13. Plaintiff contends that he is being punished for filing grievances and is in fear for his safety. *Id.*

Plaintiff alleges that Defendants "lack the necessary facility and resources at Wakulla C.I. Annex to satisfy [his] medical security, and rehabilitative needs." *Id.* at 15. He generally alleges that forcing him to stay at that institution will lead to a decline in his physical and mental health due to the denial of medical care. *Id.* at 16-17. Plaintiff requests this Court "intervene and protect the rights of its most defenseless and vulnerable citizens." *Id.* at 17. He requests a temporary restraining order or preliminary injunction, the appointment of counsel, and the appointment of an expert witness. *Id.* at 21-30.

Granting or denying a preliminary injunction is a decision within the discretion of the district court. Carillon Importers, Ltd. v. Frank Pesce Intern. Group Ltd., 112 F.3d 1125, 1126 (11th Cir. 1997) (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983)). Preliminary injunctive relief may be granted only if the moving party establishes:

    (1) a substantial likelihood of success on the merits;

    (2) a substantial threat of irreparable injury unless the injunction issues;

    (3) the threatened injury to the movant outweighs whatever harm the proposed injunction may cause the opposing party; and

    (4) granting the injunction would not be adverse to the public interest.

Keeton v. Anderson–Wiley, 664 F.3d 865, 868 (11th Cir. 2011); Carillon Importers, Ltd., 112 F.3d at 1126; United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983).  To be entitled to a preliminary injunction, a plaintiff must demonstrate all four prerequisites.  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); Jefferson Cnty., 720 F.2d at 1519 (citing Canal Auth. v. Callaway, 489 F.2d 567 (5th Cir. 1974)).

    In this case, Plaintiff has not demonstrated a substantial likelihood of success on the merits.  A prisoner challenging the alteration, or even the termination, of certain prescribed medications faces a heavy burden to demonstrate that his Eighth Amendment rights have been violated as opposed to a mere difference of opinion between the prisoner and medical staff as to the proper treatment required.  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans, 871 F.2d 1030, 1033 (11th

Cir. 1989)). That is not to say that a prisoner can never make this showing, but it is a high hurdle which has not been met here. That is especially true in this case because Plaintiff alleged that medications were stopped or altered while Plaintiff was at Lake Correctional Institution, and that the Department discontinued certain drugs while he was at Charlotte Correctional Institution. ECF No. 10 at 9-10. Thus, even before Plaintiff arrived at Wakulla Correctional Institution, his medications had been changed.

Another obstacle for Plaintiff is that his motion lacks specific facts which identify particular medical doctors who changed his medications. Plaintiff has generally referred to the actions of the "Defendants," but considering that Plaintiff initiated this litigation in one Court without naming any persons as Defendants from Wakulla Correctional Institution, such a reference does not provide a basis to grant an injunction against any person at Wakulla Correctional Institution. That was the essence of Plaintiff's motion because he was located at that institution at the time it was filed. Plaintiff has subsequently been transferred again to another institution and he is no longer at Wakulla C.I. Without identifying a specific person who has caused him harm and who has the current ability to

provide the remedy of injunctive relief to Plaintiff, the motion is insufficient on its face.

It is respectfully **RECOMMENDED** that Plaintiff's motion for a temporary restraining order and preliminary injunction, ECF No. 10, be **DENIED** and this case be **REMANDED** to the undersigned for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on June 27, 2019.

S/   Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.