# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**PROPHET PAULCIN,**
**D.O.C. # W11537,**

      **Plaintiff,**

**vs.**                               **Case No. 4:19cv47-WS-MAF**

**M. KEY, A.R.N.P.,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The pro se Plaintiff filed a fourth amended complaint [hereinafter "complaint"], ECF No. 35, and service was directed. ECF No. 45. In response to the complaint, Defendant Key has filed a motion to dismiss. ECF No. 55. Defendant contends that because she is sued in her individual capacity and no longer works at the same institution where Plaintiff is housed, Plaintiff cannot obtain injunctive or declaratory relief. *Id.* at 2. Further, she argues that Plaintiff's in forma pauperis status should be revoked and this case dismissed because "Plaintiff is a three strike litigant." *Id.* She also argues that Plaintiff's request for compensatory and punitive

damages must be dismissed pursuant to 42 U.S.C. § 1997e(e).  *Id.* at 15.

Finally, Defendant Key asserts that Plaintiff's complaint fails to state a

claim and she raises qualified immunity.  *Id.* at 3.

Plaintiff was advised of his obligation to respond to the motion to

dismiss, ECF No. 56, and was given three extensions of time to do so.

ECF Nos. 62, 64, and 66.  Plaintiff's response, ECF No. 69, was timely

submitted and the motion is ready for a ruling.

**Procedural History**

Before reviewing the merits of the motion and the claims of Plaintiff's

complaint, it would be beneficial to set forth a short summary of the unique

procedural history of this case.  Plaintiff's case was initiated in the Southern

District of Florida in August of 2018.  At the time, Plaintiff was incarcerated

at the Wakulla Correctional Institution Annex, but Plaintiff's complaint, ECF

No. 1, concerned events that occurred while Plaintiff was detained at

Charlotte Correctional Institution and Martin Correctional Institution.  *See*

ECF No. 11 at 1 (citing to ECF No. 1).  Notably, Magistrate Judge P.A.

White granted Plaintiff leave to proceed in forma pauperis, ECF No. 6, and

directed Plaintiff to file an amended complaint, ECF No. 7.  Instead of filing

the amended complaint, Plaintiff filed a motion for temporary restraining

order.  ECF No. 10.  After reviewing that motion, Magistrate Judge White

entered a Report and Recommendation, ECF No. 11, recommending that

the motion for a restraining order be separated from the case and

transferred to this Court because the motion concerned events which

occurred since his arrival at Wakulla Correctional Institution, and were

"separate from the claims presented in" Plaintiff's complaint.  The

recommendation was adopted, and the motion for temporary restraining

order was transferred to this Court.  ECF No. 15.

This case was opened in this Court on February 6, 2019.  ECF No.

16.  Noting the unusual posture of this case, an Order was entered by

Magistrate Judge Charles A. Stampelos, ECF No. 18, explaining to Plaintiff

that this case could not continue "without the filing of a civil rights

complaint" and he was required to either pay the filing fee or file an in

forma pauperis motion.  *Id.* at 3.  Plaintiff filed an in forma pauperis motion,

ECF No. 19, which was granted on March 19, 2019, prior to Plaintiff's filing

the complaint in this case.[1]  Plaintiff then filed a first amended complaint,

---

[1] However, Plaintiff's allegations from the motion for a temporary restraining order
were noted.  *See* ECF No. 20 at 1-2.  In particular, Plaintiff said he was "in threat of
imminent death or great bodily harm" after his arrival at Wakulla Correctional Institution
Annex on February 28, 2018.  ECF No. 10 at 1, 10.  Plaintiff claimed that unnamed
Defendants had discontinued his medical and mental health treatment without medical

ECF No. 21, in late March 2019.  Ultimately, Plaintiff's fourth amended

complaint,[2] ECF No. 35, was deemed sufficient to state a claim and service

was directed.

Three other procedural points are noteworthy.  First, Plaintiff's motion

for a temporary restraining order, ECF No. 10, which initiated this case has

been denied.  ECF Nos. 26, 30.  Second, the Report and Recommendation

entered on that motion noted that Plaintiff was a "'three striker' under

§ 1915(g) and [Plaintiff] acknowledged that fact" in his amended complaint.

ECF No. 26 at 2, n.1 (citing ECF No. 21 at 9).  Third, Plaintiff was housed

at Wakulla C.I. when the motion, ECF No. 10 was filed.  He was transferred

to the Florida State Prison in May 2019, ECF No. 23, and returned to

Wakulla C.I. in January 2020.  ECF No. 36.  He has been transferred

several more times during the pendency of this case, *see* ECF Nos. 49, 53,

---

justification.  *Id.* at 10.  He also claimed that Dr. Key told him that she would not provide
him with any medical care, although he acknowledged that she did try to transfer him to
RMC at a later point, but Plaintiff declined the examination and treatment.  *Id.* at 11, 15.
Plaintiff said he did "not feel comfortable or safe on" protective management and
advised that he was suffering intense fear, distress, and increased "symptoms of suicide
ideation."  *Id.* at 12.  Plaintiff also indicated that he was being held in protective
management against his wishes, and claimed that the administration at Wakulla was
"out to punish him for exercising his right to seek redress of grievance."  *Id.* at 13.

[2] Plaintiff's second amended complaint, ECF No. 25, was filed on June 18, 2019, and
his third amended complaint, ECF No. 33, was filed on September 10, 2019.

57, and 58, and his most recent notice of a change of address reveals Plaintiff is currently housed at Santa Rosa C.I. Annex.  ECF No. 63.

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) (retiring the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570, 127 S. Ct. 1955).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), cert. denied, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965, (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

556); *see also* Speaker v. U.S. Dep't of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 556). A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557).

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc.</u>

<u>v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).  The requirements of Rule 8 do "not

unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  <u>Iqbal</u>, 556 U.S. at 678-79, 129 S. Ct. at 1949.  A complaint

does not need detailed factual allegations to survive a motion to dismiss,

but Rule 8 "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation."  556 U.S. at 678, 129 S. Ct. at 1949.  "A pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'"  *Id.* (quoting <u>Twombly</u>, 550 U.S. at 555).

Thus, "conclusory allegations, unwarranted factual deductions or legal

conclusions masquerading as facts will not prevent dismissal."  <u>Davila v.</u>

<u>Delta Air Lines, Inc.</u>, 326 F.3d 1183, 1185 (11th Cir. 2003).

    One additional principle bears highlighting: a motion to dismiss does

not test the truth of a complaint's factual allegations.  As noted above,

factual allegations, though not legal conclusions, must be "accepted as

true," <u>Ashcroft</u>, 556 U.S. at 678, 129 S. Ct. at 1949, even when they are

"doubtful in fact."  <u>Twombly</u>, 550 U.S. at 555, 127 S. Ct. at 1965.  "Instead,

it remains true, after <u>Twombly</u> and <u>Iqbal</u> as before, that 'federal courts and

litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later.'"  Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168-69 (1993) (quoted in Yawn v. Sec'y of Dep't of Corr., No. 5:13cv228-RH/EMT, 2017 WL 2691423, at *1 (N.D. Fla. June 21, 2017)).

**Relevant Allegations**

Plaintiff's fourth amended complaint, ECF No. 35, filed on November 25, 2019, is the relevant pleading.[4]  He alleged that he attempted suicide on September 20, 2017, which resulted in his hospitalization.  *Id.* at 8.  He states that he was left "with permanent injury" which included vision impairment, brain damage, nerve damage, and an "epilepsy disorder."  *Id.*

After Plaintiff was transferred to Wakulla Correctional Institution in late February 2018, Defendant Key allegedly, "discontinued and refused to renew Plaintiff's medical treatment" without evaluating him.  *Id.* Specifically, Plaintiff contends that she discontinued his seizure medication in addition to other medications, resulting in Plaintiff suffering "multiple seizures" in "April-May," and again in June 2018, which Plaintiff contends

---

[4] Plaintiff again admitted "to having three strikes."  ECF No. 35 at 7.

caused him to suffer additional injuries.  *Id.* at 8-9.  Plaintiff alleges that DOC policy requires inmates who are diagnosed with epilepsy to have "compatible cellmates."  ECF No. 35 at 9.  He states that because Defendant Key denied him epilepsy treatment, he was also denied a cellmate who could have assisted and "prevented the extensive damage Plaintiff sustained" from the additional seizures.  *Id.*

Defendant Key evaluated Plaintiff again but "persisted" in the "same medical course of action," which Plaintiff contends amounts to deliberate indifference to his serious medical needs.  *Id.*  Despite Plaintiff's having informed Defendant Key of medical issues he was experiencing, along with "excruciating pain," Defendant Key told him that she would not recommend or prescribe "any medical treatment for Plaintiff due" to Plaintiff's grievances.  *Id.* at 10.

Plaintiff contends that he continued to suffer multiple seizures and that nurses at sick call recommended that his sick call medications be renewed.  *Id.*  Those nurses also provided him with over-the-counter pain medications and recommended "further evaluation and treatment" after "each incident."  *Id.*  Plaintiff alleges that a different physician has again

diagnosed him with epilepsy disorder, prescribed him anti-seizure medications, and placed him in the chronic illness clinic." *Id.* at 11.

Plaintiff claims that Defendant Key knew of his serious medical needs but "deliberately failed to provide any treatment or diagnostic evaluation of [his] known medical conditions." *Id.* at 12. He is suing the Defendant "in her individual and official capacity." *Id.* Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages. *Id.* at 13-14.

**Analysis**

**A.    Three Strikes**

Defendant first argues that "Plaintiff is not entitled to in forma pauperis status" and, thus, the fourth amended complaint should be dismissed. ECF No. 55 at 8. Defendant advises that Plaintiff had three cases dismissed on the grounds that they were either frivolous, malicious, or failed to state a claim by 2009 and, accordingly, Plaintiff had accumulated "three strikes" prior to filing this case. *Id.* at 9-10. Thus, Defendant contends that Plaintiff should not have been granted in forma pauperis status and Defendant requests that Plaintiff's in forma pauperis statues be revoked. *Id.* at 10-11. Defendant also argues that Plaintiff's

fourth amended complaint does not provide a basis for Plaintiff to proceed "under the 'imminent danger' exception."  *Id.* at 11.

Plaintiff has acknowledged that he has "three strikes."  Plaintiff did so in the first complaint he filed in this Court, ECF No. 21 at 9, and he did so in the fourth amended complaint.  ECF No. 35 at 7.   Additionally, the case initiating document (motion for temporary restraining order) alleged that Plaintiff was "in threat of imminent death or great bodily harm" and he claimed he would "suffer irrevocable harm unless this Honorable Court intervenes."  ECF No. 10 at 1.  Plaintiff alleged in the motion that after he arrived at Wakulla C.I., Defendant Key discontinued his "medical and mental health treatment," and did so without any medical justification.  *Id.* at 10.

A prisoner who has accumulated at least three dismissals which count as "strikes" under 28 U.S.C. § 1915(g) is not entitled to proceed with in forma pauperis status unless he meets the "imminent danger" exception of § 1915(g).[5]  Daker v. Robinson, 802 F. App'x 513, 515 (11th Cir. 2020)

---

[5] "The full text of the three-strikes provision reads: 'In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [in forma pauperis] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief

(agreeing with district court that prisoner "was ineligible to proceed IFP").  It

is been well established for over twenty years that allegations of "past

harm" are "insufficient to meet the imminent-danger requirement."

Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (cited in Daker,

802 F. App'x at 515).  A prisoner must allege plausible facts that are not

merely speculative or "too attenuated" from the basis for the complaint.

802 F. App'x at 515 (citing to Pettus v. Morgenthau, 554 F.3d 293, 297 (2d

Cir. 2009) ("[T]he statute requires that the prisoner's complaint seek to

redress an imminent danger of serious physical injury and that this danger

must be fairly traceable to a violation of law alleged in the complaint.")).

The facts must not be asserted in a vague or "conclusory manner" and they

must show that "at the time he filed his complaint," the plaintiff was "in

imminent danger."  O'Connor v. Sec'y, Fla. Dep't of Corr., 732 F. App'x

768, 770-771 (11th Cir. 2018).

     While courts are usually confronted with § 1915(g) claims of

"imminent danger" in the context of physical threats, such claims are also

---

may be granted, unless the prisoner is under imminent danger of serious physical injury.'"  28 U.S.C. § 1915(g) (quoted in Lomax v. Ortiz-Marquez, 140 S. Ct. 1721, 1724 (2020) (holding that a dismissal for "failure to state a claim counts as a strike, whether or not with prejudice")).

Case No. 4:19cv47-WS-MAF

possible in actions challenging the denial of medical care. In Brown v. Johnson, 387 F.3d 1344, 1346 (11th Cir. 2004), the Eleventh Circuit addressed such a claim with a plaintiff who was diagnosed with HIV and hepatitis. The prisoner alleged that his prison doctor had stopped all of his "prescribed treatment," and that "because of the withdrawal of his treatment," "his health would deteriorate and he would die sooner." Brown, 387 F.3d at 1347, 1350. The Eleventh Circuit concluded that the prisoner's allegations met the imminent-danger exception because, "[l]iberally construed, Brown alleges a total withdrawal of treatment for serious diseases, as a result of which he suffers from severe ongoing complications, is more susceptible to various illnesses, and his condition will rapidly deteriorate." Id. at 1350.

In a follow-up case, the Eleventh Circuit concluded that the district court improperly dismissed a prisoner's complaint for failing to meet the imminent danger exception of § 1915(g). Mitchell v. Nobles, 873 F.3d 869, 873 (11th Cir. 2017). The district court had dismissed inmate Mitchell's complaint on the basis that he was only alleging that "medical staff [were] refusing to provide him with a break through medication said to cure 96–99% of patients with 'Hepatitis C.'" Mitchell, 873 F.3d at 873. The

district court apparently viewed the complaint as a dispute about the proper treatment for hepatitis, stating that he was complaining that he was "not being provided different (or the newest available) treatment," *id.*, but the Eleventh Circuit disagreed.  The court found that Mr. Mitchell had "alleged a total lack of hepatitis treatment and the resulting onset of cirrhosis" because there was no indication that he was being provided any treatment. 873 F.3d at 874.  Thus, the court concluded that Mitchell had "alleged a complete lack of treatment for his hepatitis C and" met "the <u>Brown</u> standard for showing an imminent danger under § 1915(g)."  *Id.*; *see also* <u>Wright v. Sprayberry</u>, 817 F. App'x 725, 729 (11th Cir. 2020) (concluding that plaintiff "met the imminent-danger exception to" § 1915(g) as Wright alleged that he was deprived "of his medication upon arrival at Hays, and that the medical staff at Hays failed to treat him for open wounds, a broken hand, and a gum infection").

Here, Defendant contends that Plaintiff's allegations "relate to events that occurred in Wakula CI-Annex prior to the filing of the complaint."  ECF No. 55 at 11.  Defendant argues that Plaintiff did not demonstrate "he was in imminent danger of serious physical injury from Nurse Practitioner Key."

*Id.*  Morever, Defendant points out that, at the time that motion was filed, Plaintiff was "housed at Dade C.I."  *Id.*

At the time the case initiating document was filed, the motion for a restraining order, ECF No. 10, Plaintiff was housed at Wakulla Correctional Institution where Defendant Key was also employed.  Plaintiff complained of ongoing conduct because he alleged that Defendant Key "discontinued furnishing Paulcin any medical and mental health treatment," said she would "absolutely not render any medical care to Paulcin," and would not provide him medical care because of his grievances.  ECF No. 10 at 10-11. Plaintiff claimed he would face "imminent death and/or great bodily harm" unless the Court granted him relief.  *Id.* at 11.   Plaintiff said that he "continues to suffer excruciating and intense pain," and "continues to suffer periodical seizures."  *Id.* at 11.  He alleged that he "continues to suffer intense psychological distress" and suicidal ideation.  *Id.* at 12.  Those allegations meet the standards of Brown and Mitchell because Plaintiff plainly "alleged a complete lack of treatment" for serious medical needs and, as a result, continued to suffer more seizures which put his safety, and life, at risk.

As for Defendant Key's argument that Plaintiff was transferred and located at a different institution by the time he filed the fourth amended complaint, ECF No. 55 at 11, that does not provide a basis to revoke Plaintiff's in forma pauperis status and dismiss this case. Section 1915(g) requires that at the time the action is filed, a prisoner with "three strikes" must be facing "imminent danger of serious physical injury." 28 U.S.C. § 1915(g). The statute does not specify that imminent danger must continue throughout the duration of the litigation. If a judicial rule emerged which required dismissing a § 1915(g) prisoner's case as moot if the prisoner were subsequently transferred, it is likely that no prisoner civil rights case would ever be litigated. Prison officials could simply transfer a prisoner to avoid litigation. Therefore, the fact that Plaintiff was transferred during the pendency of this case does not mean Plaintiff was not facing "imminent danger of serious physical injury" at the time his case initiating motion was filed.

That conclusion is bolstered by the case of Barber v. Krepp, 680 F. App'x 819 (11th Cir. 2017), in which the court held that the prisoner's allegations were "sufficient to establish an 'imminent danger of serious physical harm,' and it was an abuse of discretion for the district court to

conclude otherwise." Barber, 680 F. App'x at 821. The court noted that its "conclusion [was] not altered by the fact that, during the pendency of this appeal, Barber [had] been transferred from the prison where the past attacks allegedly occurred." 680 F. App'x at 821.

More importantly, the "imminent danger" exception of § 1915(g) should be limited to its statutory purpose. The statute provides an inmate with "three strikes" access to the courts by allowing in forma pauperis status. As the Barber court noted, "[section] 1915(g) concerns only a threshold procedural question—whether the filing fee must be paid upfront or later. Separate PLRA provisions are directed at screening out meritless suits early on." Barber, 680 F. App'x at 822 (quoting Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007)). The statute, 28 U.S.C. § 1915(g), operates as a door opening mechanism; however, the in forma pauperis status should not control whether a case should continue. The argument that Plaintiff's in forma pauperis status should be revoked and this case dismissed should be rejected.

**B.     Declaratory and Injunctive Relief**

Defendant makes three arguments pertaining to Plaintiff's entitlement to declaratory relief. First, Defendant argues that she is "sued in her

individual capacity, [and] can only be sued for money damages." ECF No. 55 at 12. Second, she states that declaratory relief "is improper because [Plaintiff] alleges he has been injured by Nurse Practitioner Key's *past conduct* but makes no factual allegation that Key's conduct will be repeated in the future." *Id.* at 13. Third, she points out that Plaintiff "is no longer at the institution where Key works." *Id.*

As for the first argument, it need only be pointed out that Plaintiff sued Defendant Key "in her individual and official capacity." ECF No. 35 at 12. She is not sued only in her individual capacity.

Nevertheless, it is well established that to receive declaratory or injunctive relief, Plaintiff "must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) (citing Newman v. Alabama, 683 F.2d 1312 (11th Cir. 1982)). In this case, Plaintiff has not demonstrated a "serious risk of continuing irreparable injury" because Plaintiff was no longer at Wakulla Correctional Institution at the time the fourth amended complaint was filed. That is where Defendant Key is employed and provides medical care. Plaintiff has not shown that there is a "serious risk"

that he will again be treated by Defendant Key in the future.  Plaintiff's

requests for both declaratory and injunctive relief should be dismissed.

## C.    Physical Injury and Limitation on Damages

Defendant points out that "under the PLRA, 42 U.S.C. § 1997e(e),

'[n]o Federal civil action may be brought by a prisoner confined in a jail,

prison, or other correctional facility, for mental or emotional injury suffered

while in custody without a prior showing of physical injury.'" ECF No. 55 at

15.  Defendant argues that when a plaintiff does not allege suffering

physical injury as a result of the challenged conduct of the defendant, "the

plaintiff's compensatory and punitive claims are barred by § 1997e(e)."  *Id.*

(citing Al-Amin v. Smith, 637 F.3d 1192, 1198 (11th Cir. 2011).  Defendant

cites to case law noting that self-inflicted injuries from a suicide attempt is

insufficient to support the "physical injury" requirement.  *Id.* at 15-16.

In the Eleventh Circuit, the "physical injury" requirement has been

held to "be more than 'de minimis,' although it 'need not be significant.'"

Harris v. Garner ("Harris I"), 190 F.3d 1279, 1286 (11th Cir.), reh'g en banc

granted, vacated, 197 F.3d 1059 (11th Cir. 1999), and reinstated in

relevant part on reh'g, 216 F.3d 970 (11th Cir. 2000) (en banc) ("Harris II")

(cited in Thompson v. Smith, 805 F. App'x 893, 900-01 (11th Cir. 2020)).

Case No. 4:19cv47-WS-MAF

Until recently, the law in the Eleventh Circuit required precluding both compensatory and punitive damages if a prisoner-plaintiff could not meet the physical injury requirement of 42 U.S.C. § 1997e(e).  Harris II, 216 F.3d 970; Al-Amin, 637 F.3d at 1199.[6]  However, the Eleventh Circuit Court of Appeals has recently reversed course based on its re-reading of the statute.  Hoever v. Marks, No. 17-10792, 2021 WL 1326618, at *6-*7 (11th Cir. Apr. 9, 2021) (stating "we now recognize that these concerns misapprehend the text of the statute and the nature of the physical injury requirement when it comes to punitive damages").

The Eleventh circuit noted that all other circuits except the D.C. Circuit and Eleventh Circuit permit punitive damages even without physical injury.  Davis v. District of Columbia, 158 F.3d 1342, 1345, 1348 (D.C. Cir. 1998) (cited in Hoever, 2021 WL 1326618, at *7); *see also* Carter v. Allen, 940 F.3d 1233, 1235 (11th Cir. 2019) (William Pryor, J.).[7]  The Court also

---

[6] "The panel in Al-Amin hewed to Harris I's interpretation of the statute by saying that limiting § 1997e(e) to compensatory and punitive suits alleging mental or emotional injury would lead to "illogical results" based on "artful pleading."  Al-Amin, 637 F.3d at 1197 n.5 (explained in Hoever v. Marks, No. 17-10792, 2021 WL 1326618, at *7 (11th Cir. Apr. 9, 2021)).

[7] Although he agreed with the decision not to rehear the appeal to overrule Al-Amin, Circuit Judge William Pryor wrote separately and noted that four other circuits agreed with the Eleventh Circuit "that section 1997e(e) bars compensatory damages for First Amendment claims unaccompanied by a showing of physical injury."  Carter v. Allen,

noted that its "precedent foreclosed an important remedy intended to

punish and deter the intentional violation of the rights of prisoners."

Hoever, 2021 WL 1326618, at *8.  Therefore, concluding that "the text of

§ 1997e(e) does not support" limiting the remedy of punitive damages, the

Court held "that § 1997e(e) permits claims for punitive damages without a

physical injury requirement."  2021 WL 1326618, at *8.  In light thereof,

Defendant's motion to dismiss the punitive damage claims should be

denied.

In addition, review of Plaintiff's complaint reveals that his request for

both compensatory and punitive damages was not based solely on "self-

inflicted injuries."  Rather, Plaintiff's suicide attempt occurred in September

---

940 F.3d 1233, 1235 (11th Cir. 2019) (Pryer, J.) (citing Geiger v. Jowers, 404 F.3d 371, 374–75 (5th Cir. 2005); Royal v. Kautzky, 375 F.3d 720, 722–23 (8th Cir. 2004); Searles v. Van Bebber, 251 F.3d 869, 875-76 (10th Cir. 2001); Allah v. Al–Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000)).  However, five other circuits "have held that First Amendment claims permit compensatory damages that redress the injury to the liberty interest itself—independent of any physical, mental, or emotional harm—and are, therefore, not subject to the limitation on recovery."  Carter, 940 F.3d at 1235 (citing Wilcox v. Brown, 877 F.3d 161, 169-70 (4th Cir. 2017); Aref v. Lynch, 833 F.3d 242, 267 (D.C. Cir. 2016); King v. Zamiara, 788 F.3d 207, 212-13 (6th Cir. 2015); Rowe v. Shake, 196 F.3d 778, 781-82 (7th Cir. 1999); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998)).  Judge Pryer noted that nine circuits have held that "the special deterrent role of punitive damages means that they are not 'for ... injury suffered,' emotional or otherwise."  940 F.3d at 1235 (citing King, 788 F.3d at 216-17; Kuperman v. Wrenn, 645 F.3d 69, 73 & n.5 (1st Cir. 2011); Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007); Royal, 375 F.3d at 723; Calhoun v. DeTella, 319 F.3d 936, 941-42 (7th Cir. 2003); Oliver v. Keller, 289 F.3d 623, 629-30 (9th Cir. 2002); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002); Searles, 251 F.3d at 881; Allah, 226 F.3d at 251-52)).

20, 2017, prior to his transfer to Wakulla Correctional Institution in February 2018.  ECF No. 35 at 8.

Plaintiff alleged that after Defendant refused to provide him with medical care and refused to renew his seizure medication, he experienced multiple seizures.  *Id.* at 9.  Plaintiff alleged suffering minor or "de minimis" injuries such as abrasions, swollen areas, bleeding, and the like.  *Id.* However, he also alleged suffering "brain damage," "permanent disfigurement to his teeth requiring dental treatment," and "migraine headaches, blurred vision and permanent diminishment in vision."  *Id.* at 9, 11.  At this point in the proceedings, Plaintiff's complaint alleged sufficient physical injury upon which to deny Defendant's motion to dismiss Plaintiff's request for both compensatory and punitive damages.  At the motion to dismiss stage, it is recommended that the claims proceed.  Whether Plaintiff can provide evidentiary support for his alleged injuries is a separate matter from whether Plaintiff sufficiently alleged physical injury.

### D.    Failure to State a Claim

Defendant Key argues that, based on Plaintiff's allegation that she discontinued his medications, this case amounts to only Plaintiff's

disagreement with Defendant's medical judgment and his desire for a "different treatment."  ECF No. 55 at 19.  The Court disagrees.

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The Eighth Amendment guarantees that prisoners will not be "deprive[d] ... of the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoted in Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)).  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety."  Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in Collins v. Homestead Corr. Inst., 452 F.App'x 848, 850-851 (11th Cir. 2011)).

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).  "A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted) (quoted in

Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011)).  "In either of

these situations, the medical need must be 'one that, if left unattended,

'pos[es] a substantial risk of serious harm.'"  Farrow, 320 F.3d at 1243

(citation omitted); *see also* Mann v. Taser Intern., Inc., 588 F.3d 1291,

1307 (11th Cir. 2009).  Alternatively, "a serious medical need is determined

by whether a delay in treating the need worsens the condition" or "if left

unattended, poses a substantial risk of serious harm."  Mann v. Taser

Intern., Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (citations omitted).

Deliberate indifference requires more than negligence,[8] but it is

unnecessary to show a defendant intended to cause harm.  Farmer v.

Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811

(1994).  Deliberate indifference requires a plaintiff to show that a defendant

was subjectively reckless and consciously disregarded a substantial risk of

serious harm.  Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed.

2d 271 (1991) (explained in Farmer, 511 U.S. at 838-40, 114 S. Ct. at

---

[8] "Conduct that is more than mere negligence includes: (1) grossly inadequate care;
(2) a decision to take an easier but less efficacious course of treatment; and (3) medical
care that is so cursory as to amount to no treatment at all."  Bingham, 654 F.3d at 1176
(citing Brown v. Johnson, 387 F.3d 1344, 1451 (11th Cir. 2004)).

1979-80).  "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute 'an unnecessary and wanton infliction of pain.'"  Estelle, 429 U.S. at 105-06, 97 S.Ct. 285 (quoted in Farrow, 320 F.3d at 1243).

In a claim for the denial of medical care, a plaintiff must show: "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts."  Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001); Farrow, 320 F.3d at 1243.  Put another way, to show a defendant acted with deliberate indifference, "a prisoner must show the prison official's: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence.'"  Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

 "However, not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' "  McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999) (citation omitted) (quoted in Farrow, 320 F.3d at 1243).  For example, medical malpractice

does not constitute deliberate indifference.  Estelle, 429 U.S. at 106, 97 S.

Ct. at 292.  "Nor does a simple difference in medical opinion between the

prison's medical staff and the inmate as to the latter's diagnosis or course

of treatment support a claim of cruel and unusual punishment."  Harris v.

Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (citing Waldrop v. Evans,

871 F.2d 1030, 1033 (11th Cir. 1989)).  "A 'complaint that a physician has

been negligent in diagnosing or treating a medical condition does not state

a valid claim of medical mistreatment under the Eighth Amendment.'"

Estelle, 429 U.S. at 106, 97 S.Ct. at 292 (quoted in Bingham, 654 F.3d at

1176).  For example, the prisoner in Estelle received treatment for his back

injury, but complained that more should have been done in the way of

diagnosis.  The Court rejected this as a basis for liability:

> But the question whether an X-ray--or additional diagnostic
> techniques or forms of treatment--is indicated is a classic
> example of a matter for medical judgment.  A medical decision
> not to order an X-ray, or like measures, does not represent
> cruel and unusual punishment.

429 U.S. at 107, 97 S. Ct. at 293.  Put simply, an "official acts with

deliberate indifference when he or she knows that an inmate is in serious

need of medical care, but he fails or refuses to obtain medical treatment for

the inmate."  McElligott, 182 F.3d at 1255 (citations omitted).

Here, although Defendant did not address the prerequisite issue for pursuing an Eighth Amendment claim for the denial of medical care, the Court concludes that Plaintiff's diagnosis of epilepsy and his history of seizures constitutes a "serious medical need."  Second, the complaint adequately alleged that Defendant Key discontinued Plaintiff's medications "without evaluating him."  ECF No. 35 at 8.  Plaintiff brought the need for his medications to Defendant Key's attention, and she "refused to renew" them.  *Id.*  After having numerous seizures, Plaintiff alleged that Defendant Key was made aware of his "medical chart" and knew of his risk of having more seizures.  *Id.* at 9.  Defendant Key evaluated him after having "multiple major seizures," but still "persisted on her same medical course of action" and did not renew his medication.  *Id.*  Eventually, a nurse also allegedly recommended Plaintiff's seizure medications be renewed, which still did not happen.  Plaintiff alleged that he continued to suffer, on average, five seizures a month.  *Id.* at 10.  Under McElligott, 182 F.3d at 1255, Plaintiff's allegations are sufficient to show that Defendant Key was deliberately indifferent to his known and serious medical needs by refusing to provide Plaintiff with medical treatment.

Defendant Key also argues that Plaintiff's complaint "fails to plausibly allege an affirmative causal connection between Key's acts and his alleged 'injuries' because Plaintiff was still able to access sick call, was seen by a nurse, "was prescribed pain medication, and was referred for further evaluation and treatment every month for an entire year."  ECF No. 55 at 16-17, 20.  To be clear, Plaintiff alleged that a nurse flagged his "medical chart to be reviewed by [Defendant] Key," ECF No. 35 at 9, but Plaintiff alleged that Defendant Key refused to provide him medical care and renew his anti-seizure medications.  *Id.* at 9-10.  According to Plaintiff, another nurse also recommended that his seizure medications be renewed in August of 2018, but there is no indication that Defendant Key did so.[9]  *Id.* at 10.  That fact that Plaintiff was seen by a nurse in sick call does not remedy the failure to provide him with a needed medication.

Moreover, as for Defendant Key's argument that Plaintiff was given pain medication, that addresses only part of Plaintiff's medical issues; not his ongoing seizures and epilepsy.  Further, Plaintiff alleged that a nurse "recommended effective pain medication" and prescribed him with over-

---

[9] Plaintiff alleged that his anti-seizure medications were not renewed until he saw a different physician after having another seizure in April of 2019.  ECF No. 35 at 11.

Case No. 4:19cv47-WS-MAF

the-counter pain medication.  *Id.* at 10.  Yet a nurse lacks authority to "prescribe" Plaintiff with medication.  Indeed, directing Plaintiff to take over-the-counter pain medication does not, in fact, require a prescription.  Those facts do not erase Plaintiff's allegations that Defendant Key refused to provide him with medical care and stopped his anti-seizure medication without justification.  The motion to dismiss for failure to state a constitutional violation should be denied.

## E.    Qualified Immunity

Finally, Defendant Key raises qualified immunity as a defense.  ECF No. 55 at 20-22.  "Qualified immunity shields government officials sued in their individual capacities from liability against a plaintiff's § 1983 claims if the officials' conduct did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoted in McNeeley v. Wilson, 649 F. App'x 717, 720-21 (11th Cir. 2016)).  In resolving this issue, there are two questions to consider: (1) "whether the plaintiff's allegations, if true, establish a constitutional violation"; and (2) "whether the right violated was 'clearly established.'"  Grider, 618 F.3d at

1254 (quoted in <u>McNeeley</u>, 649 F. App'x at 721); *see also* <u>Pearson v.</u>
<u>Callahan</u>, 555 U.S. 223, 232, 129 S. Ct. 808, 815-16 (2009).

It has been well established since <u>Estelle v. Gamble</u> that prison
officials must "'provide medical care for those whom it is punishing by
incarceration' precisely because the failure to do so 'may actually produce
physical 'torture or a lingering death' or, '[i]n less serious cases, . . . may
result in pain and suffering which no one suggests would serve any
penological purpose.'" <u>Estelle</u>, 429 U.S. at 103, 97 S. Ct. 285 (quoting <u>In</u>
<u>re Kemmler</u>, 136 U.S. 436, 447, 10 S. Ct. 930, 34 L. Ed. 519 (1890))
(quoted in <u>McElligott v. Foley</u>, 182 F.3d 1248, 1257 (11th Cir. 1999)).  In
light thereof, a reasonable doctor or nurse practitioner would know that
discontinuing a prisoner's anti-seizure medication without evaluating him or
prescribing another medication is a violation of clearly established law.
Because an inmate's right to medical treatment was clearly established
more than thirty years ago, Defendant Key is not entitled to qualified
immunity.  *See* <u>McElligott v. Foley</u>, 182 F.3d 1248, 1260 (11th Cir. 1999)
(denying qualified immunity to doctor and nurse and noting that "[g]iven the
abundance of caselaw from our circuit defining the parameters of

deliberate indifference, we cannot say that defendants lacked fair warning that their conduct violated the Eighth Amendment").

## **RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant Key's motion to dismiss and to strike Plaintiff's in forma pauperis status, ECF No. 55, be **GRANTED in part** and **DENIED in part**; Plaintiff's requests for declaratory and injunctive relief should be dismissed, but the motion should otherwise be denied.  It is further **RECOMMENDED** that Defendant Key be required to file an answer to Plaintiff's fourth amended complaint, ECF No. 35, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on April 20, 2021.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**